IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. CHARLES SHULRUFF, D.D.S., on behalf of plaintiff and the class members defined herein, <br><br> Plaintiff, <br><br> v. <br><br> INTER-MED, INC., and JOHN DOES 1-10, <br><br> Defendant. | Case No. 16-cv-999 <br><br> Honorable Judge Ellis <br> Magistrate Judge Rowland |

**PETITION FOR ATTORNEYS' FEES**

I.  **BACKGROUND – THE SETTLEMENT**

This case involves alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, sending unsolicited facsimile advertisements. Inter-Med, Inc. ("Inter-Med") was facing multiple class actions related to this facsimile advertisement activity. *See Hannahan Endodontic Group v. Inter-Med Inc.*, United States District Court for the Western District of Wisconsin, Civil Action No. 2:15-cv-01038-WED. Counsel for Plaintiff in both actions and Inter-Med reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon this review and analysis, and through an all-day mediation in Chicago, Illinois with the assistance of the Hon. Morton Denlow

1

(Ret.) of JAMS, Plaintiff and the Defendant entered into the Settlement Agreement which received Preliminary Approval from the Court on July 26, 2016. (Dkt. 34)

The Settlement provides a lump-sum common fund of $400,000 million for the benefit of the Settlement Class. In its Opinion preliminarily approving the Settlement, the Court found that the Settlement met all the requirement of Rule 23 of the Federal Rules of Civil Procedure and deserved preliminary approval. *See* Dkt. No. 34. The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. Notice and administration through AB Data, Ltd ("AB Data") is expected to cost, at most, $3,000.

The Class Plaintiff respectfully requests that the Court approve attorneys' fees of one third of the Settlement Fund, *net* of administrative costs paid to AB Data, as well as a $5,000 incentive award for each Class Representative. This requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested incentive award is comparable to other TCPA cases, and should be approved. Pursuant to this Court's Preliminary Approval Order, Class Counsel are filing this motion prior to the notice being sent to the class, but understand that it will not be ripe for consideration until the November 22, 2016 final approval hearing before the Court. This brief will also be posted on the Settlement Website.

## II. SEVENTH CIRCUIT STANDARD FOR COMMON FUND FEE AWARDS

The Seventh Circuit requires courts to determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mkt. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.*

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries. The Seventh Circuit and other federal courts have long recognized that when counsel's effort result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating the fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole."); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("[T]he attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v.*

*Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As other federal courts have explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, No. 09-7670, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011) (quoting *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995)).

Seventh Circuit decisions have further clarified that administrative costs should not be included in the amount on which a contingency is calculated, because in that case, the administrative costs did not constitute a benefit to the class. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). The Seventh Circuit further clarified that the "presumption" should be that "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

### III. ARGUMENT

#### A. Class Counsel's Requested Fee Award Is Reasonable.

The percentage-of-the-fund method should be used here. *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 566 (7th Cir. 1994). Class Counsel and Plaintiff have created a $400,000 non-reversionary Settlement Fund that provides substantial, actual value to Settlement Class Members. Cash awards will be made directly to Settlement Class Members, *without* class members having to submit claims. Class Counsel seek attorneys' fees of one-third of the settlement fund *net* of the administration costs paid to the Class Administrator, together with Class Counsel's out of pocket costs. Given the result obtained for the class, and the fact that the requested fee award is set at the "market range" the requested fee award is presumptively reasonable. Further, the requested Fee Award of one-third of the total Settlement Fund is also consistent with the "market price" as reflected in the fees approved by judges in this Circuit in recent TCPA class cases considering the risks of non-payment, the quality and extent of Class Counsel's work on behalf of the Settlement Class, and the overall stakes of the case.

##### 1. *Recent Seventh Circuit Attorney Fee Analysis*

A number of "claims made" or "reversionary" deals where the defendant takes back any amount of unclaimed/unused settlement funds, have recently come under scrutiny by the Seventh Circuit. Here, there is a dedicated non-reversionary "true" cash fund of $400,000. *Pearson's* discussion of *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980), highlights the difference between this settlement and those attacked by the Seventh Circuit:

> But in that case [*Boeing*] the "harvest" created by class counsel was an actual, existing judgment fund, and each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id*. at 479. "Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id*. at 480

5

> n.5. The class members [in *Boeing*] were known, the benefits of the settlement had been "traced with some accuracy," and costs could be "shifted with some exactitude to those benefiting." *Id*. at 480-81. There is no fund in the present case and no litigated judgment, and there was no reasonable expectation in advance of the deadline for filing claims that more members of the class would submit claims than did.

*Pearson*, at 782. This settlement presents precisely the type of "actual, existing judgment fund" cited with approval by the Seventh Circuit in *Pearson*, creating a $400,000 non-reversionary common settlement fund. In addition, each class member has "an undisputed and mathematically ascertainable claim" to their share of a lump-sum judgment. In fact, here, as discussed above, there is no claims process used in order for class members to obtain their share of the common fund. Each class member has a reasonable expectation that they will receive a portion of that non-reversionary fund.

Plaintiff recognizes that *Pearson* and *Redman v. RadioShack, Corp*., 768 F.3d 622, 630 (7th Cir. 2014) reversed district court rulings that included notice costs in their calculation of the "benefit" to the class for purposes of fees. However, neither of those cases were all-cash common fund cases like this one is, and the notice plan in both of those cases was deemed wanting by the Seventh Circuit. Cost of notice was deemed not properly included in the calculation of fees in *Pearson* because it was a reversionary settlement, which, according to the Seventh Circuit, incentives both plaintiff's counsel and defendant to "chill" claims because "the fewer the claims, the more money [defendant] would be willing to give class counsel to induce settlement." *Id*. at 783. In a reversionary deal, "class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims." *Id*. The direct notice plan in this case (described in detail below) presents no such issue because the settlement is non-reversionary, and all parties to the deal are interested in achieving

as much informed participation as practicable since there is no claims process to direct notice class members.

Similarly, the cost of the notice plan in *Redman* was excluded from the fee calculation because the Court found that, in the context of a coupon settlement, the cost of notice represents a benefit to class counsel as well as to the class. Plaintiff's counsel here submit that here, where there is a concrete wholly monetary benefit to the class and individual notice informs class members of a settlement check that they have "an undisputed and mathematically ascertainable" right to, the cost of notice is, in fact, a direct benefit to the class, and should be included in the Court's assessment of a reasonable fee. *Pearson* holds that "in consumer class actions, where the percentage of class members who file claims is often quite low . . . the presumption should[,] we suggest[,] be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at 782.

In spite of what Class Counsel believe to be valid distinctions between this case and the situations present in *Redman* and *Pearson*, Class Counsel here seek one-third of the fund after the final total of administrative costs are deducted as attorneys' fees, plus their out of pocket costs.

Class Counsel submit that this fee request is reasonable and consistent with market rates and should be approved. *Charvat v. AEP Energy, Inc.*, Civil Action No. 13-cv-00662 (N.D. Ill. Jan. 16, 2014) (Zagel, J.) (Dkt. No. 44) (awarding one-third of the total common fund, which was 40% of the common fund after administration expenses); *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781 (N.D.Ill. Feb. 15, 2015) (awarding 36% of the total common fund for fees for the first $10,000,000 of the settlement)*; Martin v. Dun & Bradstreet, Inc.*, 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-

third of defendants' total payout for fees); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees).

### 2. *The risk associated with this litigation justifies the requested Fee Award of one-third of the common fund.*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Sutton*, 504 F.3d at 694 (finding abuse of discretion where lower court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated"). As discussed below, Plaintiff's case involved substantial risk, making the one-third of the total settlement fund a reasonable fee sought.

### 3. *The quality of Class Counsel's performance, work invested, and stakes of the litigation further support the requested Fee Award.*

In addition to accepting considerable risk in litigating this action, class counsel also committed their time and resources to this case, without any guarantee of compensation, whatsoever. For example, Class Counsel accepted at the outset of this litigation that records identifying the faxes at issue may not be available. Moreover, even assuming that sufficient discovery would be obtained, Class Counsel accepted the risk that the Court would ultimately

8

deny certification. This is a very real concern, as, for example, courts are currently divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (finding issues of consent to predominate in TCPA action) with *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized).

Success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiffs, and counsel, and would require significant expenditure of time, money, and resources – including expert expenses – for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Green v. DirecTV, Inc.*, 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff).

### 4. *The requested fee comports with the contract between Plaintiffs and Counsel, and typical contingency fee agreements in this Circuit.*

In addition to analyzing the market price for legal services from analogous cases, the risk associated with a particular matter, and the quality of work of counsel, courts also may examine "actual fee contracts that were negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (citing *Synthroid I*, 264 F.3d at 719); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties

and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *See Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if case settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (noting that customary contingent fee is "between 33 1/3% and 40%"). The TCPA is not fee-shifting, so models for recovery for attorney's fees are closer to personal injury matters than, for example, cases brought pursuant to Chapter 41 of Title 15 of the United States Code. Here, Plaintiff entered into a representation agreement with Class Counsel within this typical range. Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

      **B.**      <u>**The Incentive Awards to the Class Representatives Should Be Approved.**</u>

Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff worked with Class Counsel to investigate the case, was kept abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. Moreover, the amount requested here, $5,000, is less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *In re Southwest Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, *11 (N.D. Ill., Aug. 26, 2013) (awarding $15,000 each to two named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 incentive awards in TCPA class settlement). The requested service award of $5,000 for each Plaintiff is reasonable and should be approved.

### IV. **CONCLUSION**

For the foregoing *reasons*, Class Counsel respectfully request that, at the time of final approval, the Court grant the motion and award Class Counsel one third of the $400,000 Settlement Fund remaining after deducting administrative costs paid to AB Data as Class Administrator, plus Class Counsel's actual out of pocket costs. Class Counsel further requests that the Court approve a service award to each Class Representative, in the amount of $5,000.

                                                           Respectfully submitted,

                                                           s/ *Dulijaza Clark*
                                                           Dulijaza Clark

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Anthony I. Paronich
BRODERICK & PARONICH, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
Facsimile: (617) 830-0327
anthony@broderick-law.com

Matthew P. McCue
LAW OFFICE OF MATTHEW P. MCCUE
1 South Ave., 3rd Floor
Natick, MA 07160
Telephone: (508) 655-1415
Facsimile: (508) 319-3077
mmccue@massattorneys.net

J. Matthew Stephens, Esq.
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-0199
mstephens@mmlaw.net

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 7, 2016, she caused the foregoing document to be electronically filed with the Clerk of the United States District for the Northern District of Illinois by filing through the CM/ECF system, which served a copy upon all counsel of record.

*s/Dulijaza Clark*
Dulijaza Clark